## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BING CHARLES W. KEARNEY, JR.,
and TONYA KEARNEY, husband and
wife as Tenants by the Entirety,

        Plaintiffs,

v.                            CASE NO. 8:21-cv-64-KKM-TGW

VALLEY NATIONAL BANK,
a national banking association, as
successor by merger to USAMERIBANK,
a Florida corporation,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

The plaintiffs allege that the defendant negligently failed to follow their instructions to open a bank account with ownership held as a tenancy by the entireties, and instead opened a joint tenancy account which enabled Bing Kearney's creditors to garnish the funds in that account. The plaintiffs also claim that the bank negligently failed to train their employees, and to advise their customers of the different types of account ownership. The defendant has filed a motion to dismiss the lawsuit on the ground that it "did not owe [the plaintiffs] any duty in connection with the activities alleged" in the complaint (Doc. 7, p. 5).

Viewing the complaint in the light most favorable to the plaintiffs, they have sufficiently alleged that the defendant breached a duty of ordinary care to them when bank personnel erroneously selected on the account signature card ownership as a joint tenancy, contrary to Bing Kearney's instructions. However, the plaintiffs' allegations that the bank negligently failed to train their employees, and to advise customers of the different types of account ownership, are not cognizable because that would impose upon the bank a fiduciary duty that it does not owe to its deposit account customers.

I therefore recommend that the Complaint be dismissed, with leave to file an amended complaint limited to the allegation that the defendant was negligent in pre-selecting the wrong type of account ownership.[1]

### I.

In 2010, plaintiff Bing Charles W. Kearney, Jr. (Bing Kearney) went to the South Tampa branch of USAmeriBank (the bank), requesting to

---

[1]The deficiencies in the complaint cannot be corrected by striking certain counts since this is a shotgun pleading. See Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313, 1320–23 (11th Cir. 2015). Thus, the plaintiffs in Count I allege all the various actions by the bank that are said to be problematic. Moreover, Count II improperly incorporates all of the paragraphs in Count I. Accordingly, a new complaint is required.

open an account that would be held by him, and his wife, Tonya Kearney, as tenants by the entireties (TBE) (Doc. 3-1, ¶¶7, 8, 14).

Bank personnel presented Bing Kearney with a computer-generated signature card which included a section titled, "OWNERSHIP OF ACCOUNT-CONSUMER PURPOSE (Select one and initial)" (id., ¶12).[2] Thus, in order to make a selection, the depositors mark the box corresponding with the desired ownership type and sign their initials on the line beside the marked box.

Two of the choices were "Multiple-Party Account" (joint tenancy, MPA) and "Multiple Party Account-Tenancy by the Entireties" (TBE) (id., p. 186).[3] Before presenting the signature card to Bing Kearney, the bank pre-marked an "X" in the box corresponding with "Multiple Party Account" (id., ¶12). The bank allegedly defaulted to this choice when opening a joint account (id., ¶13).

---

[2]This was the second time Bing Kearney attempted to open account 0056. Initially, he attempted to open a tenancy by the entireties account with his wife and son, which the bank told him was not possible (Doc. 3-1, ¶¶9, 10, 11).

[3]The critical difference between the two accounts is that, under Florida law, a judgment against one spouse is not enforceable against property owned by both spouses as tenants by the entireties. See Wexler v. Rich, 80 So.3d 1097, 1100 (Fla. App. 2012).

Bing Kearney placed his initials on the line beside the box marked with the "X" (id., ¶14). The box beside "Multiple Party Account-Tenancy by the Entireties" was empty.

Bing Kearney did not read what he signed (id.). He said he did not have his reading glasses with him (id.). Tonya Kearney also placed her initials next to the "Multi-Party Account" box that had been marked with an "X" (id., ¶75). Consequently, the bank opened the account as a "Multi-Party Account" owned by Bing and Tonya Kearney (account 0056).

In the following years, two multi-million-dollar judgments were entered against Bing Kearney and others, jointly and severally.[4] In efforts to collect on the judgments, the creditors served on the defendant Writs of Garnishment. As pertinent here, the defendant responded that it was indebted to Bing Kearney for $625,305.39, in account 0056.

Kearney sought dissolution of the Writs of Garnishment, and filed Claims of Exemption, on the ground that the funds in account 0056 were owned by him and his wife as tenants by the entireties (id., ¶¶35, 37, 97–100). The court ruled that account 0056 was not held by the Kearneys

---

[4]Specifically, on October 28, 2011, final judgment was entered in favor of Travelers Casualty & Surety Company of America in the amount of $3,750,000.00 (Doc. 3-1, ¶91). On September 28, 2012, the Federal District Court in Tampa entered a judgment in favor of Regions Bank in the amount of $3,407,620.35 (id., ¶31).

as tenants by the entireties because the signature card initialed by them specified it was a multi-party account (id., ¶90).   Consequently, the plaintiffs' funds in account 0056 were garnished (id., ¶102).

In November 2020, the plaintiffs filed this complaint in state court, asserting against defendant Valley National Bank, as successor to USAmeriBank, two counts of negligence related to the garnishment of account 0056 (see Doc. 3).  The complaint's primary allegation is that the bank breached its duty of ordinary care by failing to open the tenancy by the entireties account that Bing Kearney requested, and instead presented them with a signature card that was pre-selected by the bank as a "Multi-Party Account" (Doc. 3-1).  As indicated, that choice enabled Bing Kearney's creditor to garnish the funds in that account.  The plaintiffs also allege that the defendant failed to train its employees, and advise its customers about, the differences between these types of account ownership (id., ¶103).

The defendant removed the action to this court (Doc. 3), and it filed a Motion to Dismiss the plaintiffs' complaint on the ground that the bank "did not owe Plaintiffs any alleged duty in this context" (Doc. 7, p. 3). The plaintiffs contend that the defendant owed them a duty to use ordinary care in opening the deposit account (Doc. 16, p. 4).  The motion was referred to me (Doc. 30), and oral argument was held on the matter (see Doc. 33).

II.

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." The complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Furthermore, on a Rule 12(b)(6) motion to dismiss the pleadings are construed broadly, and the allegations in the complaint are viewed in the light most favorable to the plaintiff. Watts v. Florida International University, 495 F.3d 1289, 1295 (11th Cir. 2007).

III.

A.    The plaintiffs allege that the defendant was negligent in several ways in connection with the bank's opening of account 0056 (Doc. 16, p. 4).  In order to prevail on a negligence claim, the plaintiffs must show that the defendant owed a duty of care to the plaintiffs, that the defendant breached the duty, that the breach caused the plaintiffs' injury, and that damages are owed.  Virgilio v. Ryland Group, Inc., 680 F.3d 1329, 1339 (11th Cir. 2012); Clay Electric Co-op., Inc. v. Johnson, 873 So.2d 1182, 1185 (Fla. 2003).

6

The defendant seeks dismissal of the complaint on the ground that it did not owe any duty to the plaintiffs (Doc. 7). The focus of the defendant's argument is that the opening of a bank account is an arms-length transaction for which the bank owes no duty of care, and the "authorities cited by Plaintiffs for the alleged proposition that a bank owes its customers a 'duty to use ordinary care'... apply only in the limited context of a bank's processing of checks and similar instruments" (id., p. 6).[5] Thus, the defendant argues, even if it carelessly marked the wrong type of ownership on the account signature card, it is not liable. This argument is unpersuasive.

In Arbitrajes Financieros, S.A. v. Bank of America, N.A., 605 Fed. Appx. 820, 823 (11th Cir. 2015), the Eleventh Circuit stated that a bank (in a case unrelated to the bank's processing of checks or similar instruments), owes to its standard deposit account customers "a duty of ordinary care in arms-length transactions." Thus, the defendant had a duty to use ordinary care in pre-selecting for the plaintiffs the type of account ownership on the signature card. Notably, ordinary care in this circumstance merely required the bank to look at whether the box it marked with the "X" corresponded with the type of ownership requested by Bing Kearney.

---

[5] The usual relationship between a bank and its depositor is one of debtor to creditor. Barnett Bank of West Florida v. Hooper, 498 So.2d 923, 925 (Fla. 1986).

7

Furthermore, the plaintiffs argue that the defendant's duty to use ordinary care also arises from the general facts of this case (Doc. 16, p. 16). See McCain v. Florida Power Corp., 593 So. 2d 500, 503 (Fla.1992) ("The statute books and case law ... are not required to catalog and expressly proscribe every conceivable risk in order for it to give rise to a duty of care."). In this context, the "requirement of reasonable, general foresight is the core of the duty element." Id. Thus, Florida recognizes that a legal duty arises "whenever a human endeavor creates a generalized and foreseeable risk of harming others." Id. Consequently, "the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." Id.[6]

Here, it was reasonably foreseeable that a customer would see the "X" beside a signature line as an indication where he should sign. Indeed, Bing Kearney stated that he "just signed where [the bank employee] put the X" (see Doc. 3-1, p. 72). Therefore, when the bank undertook to mark the type of account ownership on the plaintiffs' behalf, a duty to exercise

---

[6]The imposition of such a duty is circumscribed when the claimed damages are solely economic. See Virgilio v. Ryland Group Inc., supra, 680 F.3d at 1339 (A new duty is more likely to be imposed under the "foreseeable zone of risk" standard under circumstances where the plaintiff has suffered personal or property damage.).

8

ordinary care arose which required the bank employee to check whether it correctly marked the ownership box. See McCain v. Florida Power Corp., supra, 593 So.2d at 503; Clay Electric Cooperative, Inc. v. Johnson, supra, 873 So. 2d at 1186 ("Whenever one undertakes to provide a service to others … the individual who undertakes to provide the service … assumes a duty to act carefully and to not put others at an undue risk of harm.").

Moreover, accepting the plaintiffs' allegations as true, a factfinder could conclude that bank personnel breached that duty because the "X" mark did not correspond with Bing Kearney's request for ownership held as a tenancy by the entireties. In fact, bank personnel may not have looked at the signature card before presenting it to the plaintiffs, as the plaintiffs allege that the defendant defaulted to marking an "X" in the "Multiple Party Account" box (Doc. 3-1, ¶13).

B.      The defendant asserts several other arguments in support of the contention that it did not owe a duty of care to the plaintiffs. Those arguments fail as to the defendant's duty to use ordinary care in pre-selecting the plaintiffs' account ownership. However, the defendant meritoriously argues that the other breaches of duty alleged in the complaint are not cognizable.

The defendant argues, emphatically, that it owed no duty of care to the plaintiffs because they failed to fulfill their "obligat[ion] to read and understand the contract (i.e., signature card)" (Doc. 7, p. 2).  In this respect, the defendant relies on caselaw holding that a party cannot avoid his <u>contractual obligations</u> by alleging he failed to read the agreement (<u>id</u>., p. 9).

The defendant's reliance on this contract principle is misplaced. The fact that evidence of the plaintiffs' carelessness exists does not relieve the defendant of its duty in a negligence action.  <u>See</u> <u>McCain</u> v. <u>Florida Power Corp.</u>, <u>supra</u>, 593 So.2d at 504; <u>Miles</u> v. <u>AAA Insurance Co.</u>, 771 So.2d 607, 608 (Fla. App.  2000).  Rather, "the failure of [the plaintiffs] to read the [contract] … goes to the issue of comparative negligence." <u>Miles</u> v. <u>AAA Ins. Co.</u>, <u>supra</u>, 771 So.2d at 608.[7]   In other words, determining whether the defendant had a duty precedes consideration of the plaintiffs' negligence.

The defendant contends further that "an express disclaimer ends the inquiry as to whether a tenancy by the entireties was intended" (Doc. 7,

---

[7]In <u>Miles</u> v. <u>AAA Ins. Co.</u>, the plaintiffs alleged their insurance agency was negligent because it obtained a partial-replacement coverage homeowner's policy, instead of the full-replacement coverage it requested. The defendant sought dismissal of the negligence claim on the ground that the plaintiffs were at fault for failing to read the policy.  The <u>Miles</u> court held that, "in this negligence-based action, the failure of [the plaintiffs] to read their policy … goes to the issue of comparative negligence … and does not completely preclude recovery." <u>Id</u>. at 608.

p. 7). However, this argument also fails because the caselaw cited by the defendant pertains to enforcing the written terms of a contract, not a negligence claim.

The defendant also argues that the plaintiffs' claims are not cognizable because that would improperly impose upon the bank a fiduciary duty (see id., pp. 7–8). It is undisputed that the bank does not owe a fiduciary duty to its standard deposit account customers (see Doc. 16, p. 7). Thus, the bank's duty of ordinary care "does not require [it] to act for the benefit or protection of [the plaintiffs], or to disclose facts that [the plaintiffs] could have discovered through their own diligence." Arbitrajes Financieros, S.A. v. Bank of America, N.A., supra, 605 Fed. Appx. at 823.

The plaintiffs' allegations that the bank had a duty to train employees, and advise customers, about the different forms of account ownership would impose on the bank a duty to act for the benefit and protection of its customers and, therefore, are not actionable. See Id. As succinctly explained in Wexler v. Rich, supra, 80 So.3d at 1101:

> [With regard] to the mechanics of the bank-customer relationship in the opening of accounts, Beal Bank does not require a bank to explain the legal ramifications of the various account options. Only a handful of attorneys in Florida are able to describe the differences between a tenancy by the entireties bank account and a joint account with right of survivorship. The bank's obligation is to

11

> clearly provide customers with the option of a tenancy by the entireties account, not to assist them in making a considered choice. To paraphrase the old proverb, a bank's duty under <u>Beal Bank</u> is to lead the horse to water, not to make him drink it.

<u>See also</u> <u>Beal Bank, SSB</u> v. <u>Almand & Associates</u>, 780 So.2d 45, 62 (Fla. 2001) (noting the court may not mandate that financial institutions give "an explanation of each type of ownership").

Additionally, allegations of a failure to train employees and to advise customers are properly dismissed because the plaintiffs essentially disavowed reliance on them in their opposition memorandum and they did not meaningfully address them at the hearing. Specifically, the plaintiffs state in their opposition memorandum (Doc. 16, pp. 14–15):

> Mr. and Mrs. Kearney did not present to USAmeriBank seeking advice on what type of account they should open, or what the ramifications of a particular account might be. To the contrary, Mr. and Mrs. Kearney knew full well when they entered the bank exactly what they wanted. They wanted to open a TBE account. They did not request or need the assistance of USAmeriBank in arriving at that decision. They specifically requested that the USAmeriBank employees open a TBE account for them. USAmeriBank was negligent in not fulfilling its duty of ordinary care by [not] opening a TBE account as requested, but rather presenting them with an account card that was pre-selected by a bank employee for a "Multi-Party Account." Further, Mr. and Mrs. Kearney did not need or

12

> seek the assistance of the bank to determine the ramifications of the specific account they were requesting. Again, they knew full well that they needed a TBE account to provide tenancy by the entireties protection from Mr. Kearney's individual creditors. Mr. and Mrs. Kearney requested nothing from USAmeriBank other than to provide them with a TBE account, which USAmeriBank negligently failed to do.

Therefore, the allegations of negligence based upon a purported breach of a duty to train employees properly and advise customers (Doc. 3-1, ¶¶122a–c, 131c) are properly dismissed.

On the other hand, the plaintiffs' allegation that the defendant breached a duty by selecting the wrong type of account ownership does not impose upon the defendant a fiduciary duty because the bank is not being called upon to protect the plaintiffs, but rather to use ordinary care when it pre-selected for the plaintiffs the type of account ownership. Simply put, if the bank gave the plaintiffs a signature card that did not pre-select the ownership type, there would be no actionable breach of duty in this context.

The defendant also argues that

> [b]oth of Plaintiffs' negligence claims … hinge
> upon the premise that … the presumption that a
> deposit account opened by a husband and wife is
> held as a tenancy by the entireties—creates an
> affirmative duty upon a bank to ensure that every
> account opened by a husband and wife is held as
> tenants by the entireties, even where, as here, a
> husband and wife sign a contract to the contrary
> that expressly disclaims that form of ownership.

(Doc. 7, pp. 6–7).   The defendant exaggerates the plaintiffs' allegations.

Thus, the plaintiffs do not allege that the bank was required to select a

tenancy by the entireties regardless of the customer's request.   To the

contrary, the crux of the plaintiffs' argument is that the bank failed to comply

with Bing Kearney's request for an account owned as a tenancy by the

entireties.

On the other hand, the plaintiffs' allegation that the defendant

breached its duty of care by having an improper "institutional custom" to

select the joint ownership box "for practically all husband and wife

accounts" (Doc. 3-1, ¶131b) is based on the legal presumption in Beal Bank,

SSB v. Almand & Associates, supra, 780 So. 2d at 62, that a deposit account

opened by a husband and wife is presumed to be held as a tenancy by the

entireties (id., ¶131a, b).   The plaintiffs' reliance on Beal is misplaced

because Beal does not dictate a bank's account opening procedures.

14

Therefore, the allegation that the defendant breached a duty of ordinary care based on an improper "institutional custom" is not actionable.

Finally, the defendant challenges the plaintiffs' allegation that the defendant breached a duty to use "clear and unambiguous signature cards for new accounts" (id., ¶122d). Specifically, they contend that the bank's signature card failed to "clearly designate whether the account is being opened as a joint account, or whether the account is being opened as a tenants-by-the-entireties account" (id., ¶105). As the defendant points out (Doc. 7, p. 10), this contention is frivolous because the Eleventh Circuit held that this signature card is "unambiguous." Regions Bank v. G3 Tampa, LLC, 766 Fed. Appx. 772, 776 (11th Cir. 2019). The Eleventh Circuit stated:

> [Bing Kearney argued] that the layout of this section of the card is confusing and that one could reasonably believe that the checked box belonged to "Tenancy by the Entireties" below it. We disagree. Reviewing the signature card for ourselves, we find it unambiguous.

Id.

Since the signature card is unambiguous, the bank could not have violated a purported duty to use "clear and unambiguous signature cards" (Doc. 3-1, ¶122d). Accordingly, that allegation is not cognizable.

IV.

For the foregoing reasons, the plaintiffs have stated an actionable claim of negligence based upon the allegation that the defendant breached a duty to them to exercise ordinary care when it pre-marked the signature card with an "X" in the box corresponding with multi-party account, instead of the box for a tenancy by the entireties as requested by Bing Kearney (see Doc. 3-1, ¶¶122e).  The other alleged breaches of duty are not cognizable.   Accordingly, I recommend that the Complaint be dismissed, with leave to file an amended complaint limited to the allegation that the defendant was negligent in pre-selecting the wrong type of account ownership.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: AUGUST 11, 2021.

NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections.   28 U.S.C. 636(b)(1)(C).   Under 28 U.S.C.

636(b)(1), a party's failure to object to this report's proposed findings and recommendations waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions.